|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 |   |
| 6 |   |
| 7 |   |
| 8 |   |
| 9 |   |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| ALICIA ALATORRE, | ) | NO. CV 12-00746 SS |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

Alicia Alatorre ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") to deny her application for Supplemental Security Income ("SSI") Benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the

Commissioner is REVERSED and the case is REMANDED for further proceedings consistent with this decision.

## II.

## PROCEDURAL HISTORY

Plaintiff Alicia Alatorre filed an application for Title II Disability Insurance Benefits on June 5, 2008. (AR 53). She alleged a disability onset date of September 5, 2007. (AR 102). The agency initially denied her application on August 14, 2008. (AR 58). After Plaintiff requested and received reconsideration of her claim, Plaintiff's claim was denied again on November 3, 2008. (AR 64). Plaintiff requested a hearing, which was held before Administrative Law Judge (ALJ) Wendy Weber on April 8, 2010. (AR 22). Plaintiff appeared with counsel and testified with the assistance of a Spanish language interpreter. (AR 22). On April 28, 2010, the ALJ issued a decision denying benefits. (AR 29). On May 14, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 15). On November 15, 2011, the Appeals Council denied Plaintiff's request. (AR 3-8). Plaintiff filed the instant action on January 26, 2012.

## III.

## FACTUAL BACKGROUND

Plaintiff was born on August 8, 1950. (AR 194). Plaintiff's highest completed level of education is the seventh grade. (AR 44).

2

Plaintiff does not speak English. (AR 43). Plaintiff was employed at the King Meat company from September 21, 1988 until September 1, 2007. (AR 44, 223). She worked eight to ten hour days, six days a week as a meat packager. (AR 223).

### A.   Plaintiff's Medical History

Plaintiff complains of constant low back pain and pain to her neck, right shoulder, arm and thumb. (AR 189). Plaintiff claims that the pain initially began in 2000 while working. (AR 195, 224). Plaintiff further alleges that the pain in her back, neck and right shoulder increased over time. (Id.).

Plaintiff specifically complains of constant low back pain. She describes the pain as dull to sharp pain that radiates to the mid back, upper back and neck. (AR 177). Her pain becomes worse with bending, reaching behind her back, exercises, mopping or sweeping. (Id.). Plaintiff also complains of occasional neck pain, i.e. "pins and needles sensations." (AR 198). Her pain becomes worse with prolonged sitting or carrying. (Id.). Plaintiff also complains of constant right shoulder pain. (AR 198). The pain radiates to the neck and to the right arm. (Id.). Her pain becomes worse with prolonged use of her right arm. (Id.). Plaintiff claims she can not lift more than four or five pounds and that she has difficulty raising her hand. (AR 45). Lastly, Plaintiff reports numbness in all digits of the right hand. (AR 198).

3

Plaintiff initially reported her symptoms to her supervisor in 2000. (AR 224). Plaintiff sought treatment with Dr. Martinez. (Id.). Following her visit with Dr. Martinez, Plaintiff was taken off work for approximately four weeks and received conservative treatment in the form of pain medications. (Id.).

On October 10, 2005, Plaintiff sustained an injury to her lower back during work duties. (AR 195, 224). Plaintiff slipped and fell backwards in a sitting position. (AR 224). On October 12, 2005, Plaintiff developed pain in her lower back which she attributes to the October 10, 2005 incident. (Id.). Plaintiff reported the incident to her supervisor but was not provided any medical assistance. (Id.). Plaintiff nevertheless continued her regular job duties. (AR 225).

In June 2006, Plaintiff sought medical treatment with Dr. Dolores Balba. (Id.). Dr. Balba examined Plaintiff and x-rayed her low back. Plaintiff was told she had inflamation in her lower back. (Id.). She was given an injection for her pain with no relief noted, prescribed medication, and was taken off work for three weeks. (Id.). In July, 2006, Plaintiff reported the injury to her supervisor. Plaintiff was referred to an industrial care clinic. (AR 239).

Plaintiff's initial examination was done by Dr. David Landers on July 14, 2006. (AR 233). Dr. Lander' diagnosis showed multiple trauma injuries, secondary to slip and fall accident. (Id.). Plaintiff was given medications, a lumbosacral brace and was placed on modified duties. (Id.). An x-ray of Plaintiff's lumbosacral spine by Dr. Carl Boatright showed early hypertrophic lipping, sclerosis and narrowing of

4

1 the lower apophyseal and SI joints. (Id.).  The x-ray also revealed
2 splinting to the right, suggesting muscle spasm.  (Id.).

4     On December 22, 2006, Dr. Michael Slutzker of the industrial clinic
5 diagnosed Plaintiff with chronic thoracolumbar sprain and claimed that
6 Plaintiff was permanent and stationary. (AR 234).  Plaintiff was
7 eventually transferred to the worker's compensation Agreed Medical
8 Examiner (AME) Dr. Peter Newton.  (AR 239).

10     On April 6, 2007, Dr. Newton performed an Orthopedic Examination
11 of Plaintiff. (AR 223).  Dr. Newton noted tenderness to palpation of the
12 cervical spine. (AR 228).  Moreover, Dr. Newton reported that Plaintiff
13 complained of increasing pain towards terminal range of motion of
14 Plaintiff's shoulder with a painful arc on the right. (AR 229).  Dr.
15 Newton also reported tenderness to palpation over the anterior and
16 anterolateral right shoulder. (Id.).  Plaintiff also showed tenderness
17 to palpation during elbow and right wrist/hand examinations. (Id.).
18 Lastly, Dr. Newton observed decreased, painful motion of Plaintiff's
19 lumbar spine.  (Id.).

21     In regard to Plaintiff's neck, Dr. Newton reported that Plaintiff
22 should be considered partially disabled with restrictions of no heavy
23 lifting and no repetitive motions of the neck. (AR 235).  As to
24 Plaintiff's lumbosacral spine, Dr. Newton also reported that Plaintiff
25 has restrictions of no heavy lifting and repetitive bending, stooping,
26 twisting or squatting. (Id.).  Lastly, as to Plaintiff's right shoulder,
27 Dr. Newton reported restrictions of no lifting more than fifteen pounds
28 and no repetitive lifting to or above shoulder level. (Id.).

On June 7, 2007, Dr. Newton examined Plaintiff for an Agreed Medical Re-evaluation. After reviewing Plaintiff's medical records, Dr. Newton reported the following: a May 21, 2007 MRI of Plaintiff's right shoulder showed an increased signal in the supraspinatus and infraspinatus consistent with a calcification, and an increased signal in the infraspinatus with a partial tear; an MRI of Plaintiff's cervical spine from the same date showed a 2 mm posterior disc bulge with ostephyte at C5-6; an MRI of Plaintiff's lumbar spine showed diffuse, small, 2 to 3 mm disc bulges at L3-4, L4-5 and L5-S1, and an annular fibrosis tear at L4-5. (AR 209). Dr. Newton restricted Plaintiff to lifting no more than fifteen pounds and no prolonged positioning of the cervical spine. He also restricted Plaintiff to no lifting to the shoulder level on the right. (Id.). Finally, Dr. Newton restricted Plaintiff to no repetitive bending, stooping, twisting, squatting, turning and no prolonged standing or walking. (AR 216).

On August 27, 2007, Dr. Newton conducted another re-evaluation and examination of Plaintiff. (AR 178). With respect to Plaintiff's cervical spine, Dr. Newton reported tenderness to palpation throughout the right and left paraspinal soft tissues. (Id.). During a range of motion examination, Dr. Newton observed decreased, painful motion. (Id.). Dr. Newton reported that with respect to Plaintiff's cervical spine, Plaintiff has permanent work restrictions of no lifting more than fifteen pounds and no prolonged positioning of the cervical spine. (AR 183).

On February 27, 2008, Plaintiff was evaluated and examined by Dr. Frank Giacobetti, an orthopedic surgeon. (AR 238). Dr. Giacobetti

reported tenderness to palpation over the lumbar paraspinal muscles. (AR 241). In reviewing an MRI from September 19, 2007, Dr. Giacobetti also determined that the findings were consistent with 2mm disc protrusions at L4-5 and L5-S1. (AR 242). After conducting Plaintiff's examination and reviewing her medical records, Dr. Giacobetti diagnosed Plaintiff with a lumbar strain with history of small disc bulges at L4-5 and L5-S1. (Id.). Dr. Giacobetti reported that Plaintiff may work with modified duties with the restrictions of no lifting of greater than ten pounds and no bending or stooping. (AR 243).

On July 22, 2008, Plaintiff was examined by Dr. Timothy K. Ross. (AR 247). Dr. Ross reported that Plaintiff complained of pain in her neck, back and right shoulder. (Id.). During an orthopedic examination, Plaintiff reported pain from her back during a maneuver in which her torso was rotated with her arms fixed at her sides, and without any actual motion of her back. (AR 248). Dr Ross reported subjective tenderness in the upper and lower thoracic spine, mid lumbar spine, and the bilateral paraspinal muscles. (AR 248). Dr. Ross also reported negative on an impingement test of Plaintiff's right extremity along with localized subjective tenderness in the right shoulder and arm. (AR 249). However, Dr. Ross was unable to identify evidence of significant impairment-related physical limitation. (AR 250).

## IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404,

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. See 20 C.F.R. §§ 404.1510, 416.910.

8

|       |     | Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four. |
|-------|-----|---|
|       | (4) | Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five. |
|       | (5) | Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity[2] ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

9

Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.
## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded, at step one, that Plaintiff had not engaged in substantial gainful employment since September 5, 2007. (AR 24). At step two, the ALJ found that Plaintiff had a severe impairment of the lumbar spine. (Id.). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 25).

The ALJ then found that Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: "lift and carry fifty pounds occasionally, twenty five pounds frequently; sit; sit eight hours total out of an eight our day; stand and walk six hours total out of an eight hour day; change positions briefly for one to three minutes every hours; and occasional balancing, stooping, kneeling, crouching, and crawling." (AR 25). In coming to this conclusion, the ALJ relied upon medical expert Dr. Nafoosi's

opinion that Plaintiff is capable of performing past relevant work as a meat packager. (AR 28). Accordingly, the ALJ did not proceed to step five and instead found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 29).

## VI.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not

11

substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.
## DISCUSSION

Plaintiff contends that the ALJ failed to properly consider the opinion of her Agreed Medical Examiner Dr. Newton. (Pl's. Memorandum at 8-10). Plaintiff argues that the ALJ erred by rejecting Dr. Newton's opinion and further erred by finding that claimant does not have a severe right shoulder impairment or cervical spine impairment. Finally, Plaintiff claims that the ALJ erred by adopting the medical opinion of consulting physician Dr. Nafoosi. (Id. at 10). The Court agrees.

**The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting The Examining Physician's Opinion**

Plaintiff claims that the ALJ's determination that Plaintiff does not have a medically determinable right shoulder impairment is incorrect. (Id. at 8). In regard to Plaintiff's right shoulder, Dr. Newton determined that Plaintiff has permanent work restrictions of no lifting more than fifteen pounds and no lifting to shoulder level on the right. (AR 215). The ALJ, however, rejected Dr. Newton's opinion, stating that Plaintiff does not have a medically determinable right shoulder impairment. (AR 27). The ALJ based her finding on the opinion of the medical expert, Dr. Nafoosi. Dr. Nafoosi opined that, as a result of a lack of more intensive treatments, Plaintiff's right shoulder impairment is not severe. (AR 24). The ALJ, "[i]n finding no

12

objective evidence of further injury, continued degeneration, or non-subjective complaints," concurred with the opinion of Dr. Nafoosi and found Plaintiff's right shoulder impairment is non-severe. (Id.).

Dr. Newton[3] performed multiple evaluations and examinations of Plaintiff. (AR 188, 197, 207, 222). Dr. Newton consistently reported that Plaintiff has restrictions in her right shoulder, cervical spine, and lumbar spine. Dr. Newton also consistently reported that Plaintiff has permanent work restrictions of no lifting more than fifteen pounds. Moreover, Dr. Frank Giacobetti, Orthopedic Surgeon, examined Plaintiff. (AR 243). Dr. Giacobetti restricted Plaintiff to not lifting greater than ten pounds and no bending or stooping. (Id.). Although Dr. Nafoosi opined that Plaintiff has a residual functional capacity to perform medium work (AR 26), Dr. Nafoosi's opinion was based solely on a review of the record evidence and Plaintiff's testimony prior to and during the hearing. (Id.).

Social Security law distinguishes among three types of physicians: (1) treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). An opinion of a treating physician is generally given more weight than the opinion of a non-treating physician. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). Moreover,

---

[3] Dr. Newton is a specialist and board certified. "The opinion of a specialist about medical issues related to his or her area of specialty" is entitled to greater weight than the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527 (d)(5).

although worker's compensation disability ratings are not controlling in Social Security cases, an ALJ must nevertheless determine what inferences may logically flow from the evidence. Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996). An ALJ may not ignore a physician's medical opinion from a worker's compensation proceeding. Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). The ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons." Lester, 81 F.3d at 830-31. Where such an opinion is contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." (Id.).

The Court notes that Dr. Newton examined Plaintiff, whereas Dr. Nafoosi did not conduct any examination of Plaintiff. As Plaintiff's examining physician, Dr. Newton is presumed to be in a better position to assess Plaintiff's functional limitations. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The Court finds that the ALJ did not provide specific and legitimate reasons to reject Dr. Newton's opinion regarding Plaintiff's right shoulder impairment. In reviewing Plaintiff's medical records, Dr. Newton reported evidence of calcification and a partial tear of infraspinatus from an MRI from May 5, 2007. (AR 209). Moreover, Dr. Newton's examination of Plaintiff's shoulder revealed decreased range of motion with pain at termination of the motion and tenderness to palpation over the right shoulder. (AR 229). Dr. Newton diagnosed Plaintiff's right shoulder impairment as an impingement syndrome, calcific tendinitis, and a partial thickness rotator cuff tear. (Id.).

14

Dr. Newton also reported that the aim of future treatments would likely be directed to Plaintiff's shoulder, "as she does have objective findings of the shoulder which can be treated with interventional treatment, including injections and/or surgery." (AR 183). It is unclear, however, whether Dr. Nafoosi's evaluation of Plaintiff's medical records, included consideration of the MRI of Plaintiff's right shoulder from May 5, 2007. (AR 46-48; see also AR 49 "we don't have an MRI, right?").

Next, Plaintiff contends that the ALJ's determination that Plaintiff does not have a cervical spine impairment is also incorrect. In regards to Plaintiff's cervical spine, Dr. Newton reported that Plaintiff "has permanent work restrictions of no lifting more than fifteen pounds and no prolonged positioning of the cervical spine." (AR 215). While examining Plaintiff's cervical spine, Dr. Newton observed decreased, painful motion during a range of motion examination and tenderness to palpation throughout the right and left paraspinal soft tissues. (AR 178). Moreover, after reviewing an MRI of Plaintiff's cervical spine from May 21, 2007, Dr. Newton observed a 2mm posterior disc bulge with osteophyte at C5-6. (AR 209). The ALJ rejected Dr. Newton's uncontradicted opinion but failed to provide clear and convincing reasons. The ALJ found "no cervical spine impairment" and stated that "[a] reduction to less than light lifting and carrying capacity based on two minimal disc protrusions is not supported," but offered no further explanation. (AR 27).

The ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons."

15

Lester, 81 F.3d at 830-31. Moreover, to reject the opinion of a treating or examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ must do more than offer conclusions. See Embrey v. Bown, 849 F.2d 418, 421-422 (9th Cir. 1988). The ALJ must explain the basis for any material inference the ALJ has drawn from those opinions so that meaningful judicial review will be facilitated.

Here, the ALJ improperly rejected Dr. Newton's opinion regarding Plaintiff's cervical spine impairment. The ALJ's holding that Dr. Newton's opinion is "too restrictive" and not supported by "social security rules and regulations" are mere conclusions, with no citation to record evidence. Moreover, the ALJ's failure to address the objective evidence of Plaintiff's cervical spine impairments and provide reasons for the rejection compounds the error. The Court finds that the ALJ did not provide sufficiently specific or legitimate reasons for rejecting Dr. Newton's medical opinion.

The Court finds that the ALJ erroneously gave greater weight to the opinion of Dr. Nafoosi. Dr. Nafoosi's opinion alone, without objective evidence to support it, does not constitute substantial evidence to reject the opinions of examining doctors Newton and Giacobetti.

# VIII.

# CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 1, 2013

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

17